IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

MICHAEL JAMES RYAN,
*Appellee*,
v.
ELN ENTERPRISES, LLC, d/b/a MIDWEST CES, LLC, *ET AL.*,
*Appellants.*

and

SANDRA GRAHAM
*Appellee*,
v.
ELN ENTERPRISES, LLC, d/b/a MIDWEST CES, LLC, *ET AL.*,
*Appellants.*

Consolidated Appeals from the U.S. District Court for the Western
District of Missouri
The Honorable Stephen Rogers Bough, District Judge
The Honorable Howard Frederic Sachs, District Judge

**BRIEF OF APPELLANTS ELN ENTERPRISES, LLC, d/b/a
MIDWEST CES, LLC, *ET AL.***

ARMSTRONG TEASDALE LLP
David A. Jermann
Zachary S. Beach
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3420 (phone)
djermann@atllp.com
zbeach@atllp.com

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Appellees applied for disability benefits from the Social Security Administration ("SSA"). App. 147-148, 295; R. 23-2407, Doc. 32, at 1-2; R. 23-2443, Doc. 14, at 1. In evaluating whether to award Appellees disability benefits, SSA, via an ALJ or Disability Determination Services ("DDS") ordered Appellees to receive a consultative examination ("CE") from Appellants. App. 148, 295; R. 23-2407, Doc. 32, at 2; R. 23-2443, Doc. 14, at 1. Appellees were initially denied disability benefits., but appealed and ultimately received benefits. App. 149-150, 296; R. 23-2407, Doc. 32, at 3-4; R. 23-2443, Doc. 14, at 2. Appellees generally allege that Appellants conducted improper or unlawful CEs causing Appellees' receipt of disability benefits to be delayed. *Id.*

Appellants removed the cases to federal court, asserting jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442, and the general federal question statute, 28 U.S.C. § 1331. *Id.* The district courts found remand appropriate because Appellants were not "acting under" SSA and Appellees' petitions assert only state law claims. App. 159-160, 164, 298-300; R. 23-2407, Doc. 32, at 13-14, 18; R. 23-2443, Doc. 14, at 4-6. Appellants request 15 minutes oral argument.

Appellate Case: 23-2443    Page: 2    Date Filed: 07/27/2023 Entry ID: 5300239

## CORPORATE DISCLOSURE STATEMENT

Appellant ELN Enterprises, LLC, d/b/a Midwest CES, LLC is a privately held corporation organized under Missouri state law. ELN Enterprises, LLC, d/b/a Midwest CES, LLC has no parent company and no publicly held corporation owns 10% or more of its stock.

Appellate Case: 23-2443   Page: 3   Date Filed: 07/27/2023 Entry ID: 5300239

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND
REQUEST FOR ORAL ARGUMENT ................................................... ii

CORPORATE DISCLOSURE STATEMENT ...................................... iii

TABLE OF CONTENTS ...................................................... iv

TABLE OF AUTHORITIES ................................................... vi

JURISDICTIONTAL STATEMENT ........................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........... 3

STATEMENT OF THE CASE ............................................... 5

SUMMARY OF THE ARGUMENT .......................................... 9

ARGUMENT ............................................................ 15

      I.     Standard of Review ........................................... 15

      II.    Federal Officer Removal is Proper. ........................... 15

            A.    Appellants act under a federal officer. ................. 15

                 1.    Appellants provide the Federal
Government with a service the
Federal Government is otherwise
statutorily obligated to provide itself. .......... 17

                 2.    Appellants' subcontractor status is
irrelevant because Appellants are
subject to numerous Federal
Government rules and oversight. ................. 19

Appellate Case: 23-2443    Page: 4    Date Filed: 07/27/2023 Entry ID: 5300239

3. The District Court Erred in Relying on Case Law where the Private Entity was not Performing an Action the Federal Government is Otherwise Obligated to Perform. ................................. 26

B. Appellees claims relate to Appellants official authority. .................................... 30

C. Appellants assert a colorable federal defense. ...................................... 32

1. Appellants are entitled to derivative sovereign immunity. ..................................... 32

2. Appellants' status as a subcontractor for DDS is irrelevant to removal. ................. 36

III. Appellants can remove based on federal question jurisdiction. ....................................... 38

A. Appellees' claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain. ............................................ 40

B. The district courts erred in finding that federal law does not permeate Appellees' claims. ................................................. 45

CONCLUSION ............................................... 49

CERTIFICATE OF COMPLIANCE ........................................ 50

CERTIFICATE OF SERVICE .............................................. 51

Appellate Case: 23-2443    Page: 5    Date Filed: 07/27/2023 Entry ID: 5300239

# TABLE OF AUTHORITIES

**Federal Cases**

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009) ............ 36

*Adelman v. Discover Card Servs., Inc.*,
915 F.Supp. 1164 (D. Utah 1996)................................................ 26, 27

*Adkins v. Schwartz*, No. 23-00018-CV-W-BP
(W.D. Mo. March 20, 2023) ...................................... 8, 12, 19, 25, 30, 35

*Anversa v. Partners Healthcare* Sys., Inc.,
835 F.3d 167 (1st Cir. 2016)............................................................. 44

*Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066A, 2013 WL 5723324
(W.D.N.Y. Oct. 21, 2013) ................................................................. 37

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding
Workers of Am.*, 132 F.3d 824 (1st Cir. 1997) ..................................... 39

*BP P.L.C. v. Mayor and City Council of Baltimore*, -- U.S. --, 141 S. Ct.
1532 (2021) ...................................................................................... 1

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ............. 43

*Cty. Bd. of Arlington Cty., VA v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021) ............................................................ 20

*Doe v. BJC Health System*, 4:22-cv-919-RWS,
2023 WL 369427 (E.D. Mo. Jan. 10, 2023) .................................... 26, 29

*Dyer v. Crowley Logistics, Inc.*, 22-cv-03246-SRB, 2022 WL 16636233
(W.D. Mo. Nov. 2, 2022) ................................................................. 23

*Filarsky v. Delia*, 566 U.S. 377 (2012) ............................................. 35

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .................................................................. 40, 45

vi

*Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) ................................. 1, 16

*Griffin v. JTSI, Inc.*, No. CIV. 08-00242 ACK,
2009 WL 8761211 (D. Haw. July 28, 2009) ........................................ 37

*Gunn v. Minton*, 568 U.S. 251 (2013) .................................. 39, 40, 42, 44

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
535 U.S. 826 (2002) ............................................................................ 38

*Humphries v. Elliott Co.*, 760 F.3d 414 (5th Cir. 2014).......................... 37

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to*
*Defender Ass'n of Philadelphia v. Johnson*,
790 F.3d 457 (3d Cir. 2015)........................................................... 21, 31

*In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326 (4th Cir. 2014).............. 33

*In re National Prescription Opiate Litigation*, No. 1:17-md-2804,
2023 WL 166006 (N.D. Ohio Jan. 12, 2023) ...................................... 20

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) ...................... 21

*Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224 (8th Cir. 2012).... 15, 16,
23, 24

*LaForge v. ECC Operating Svcs.*, No. CIV.A 07-523,
2010 WL 497657 (E.D. La. Feb. 5, 2010) ..................................... 36, 37

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020)....... 32

*Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1 (1st Cir. 2014) ........... 39

*Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3d Cir. 1990) ............. 37

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986)................. 39

*Minnesota by Ellison v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023).................................................... 12, 15, 30

Appellate Case: 23-2443     Page: 7     Date Filed: 07/27/2023 Entry ID: 5300239

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014) ...................................................................................... 43

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016) .................................................. 43

*O'Connor v. Smith*, No. 22-00746-CV-DGK (W.D. Mo. June 2, 2023) ..... 8

*Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016) ......................................... 30

*Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 (3d Cir. 2016) ............... 30, 31

*PNC Bank, N.A. v. PPL Elec. Utilities Corp.*, 189 F. App'x 101 (3d Cir. 2006) ......................................... 44

*R.I. Fishermen's All., Inc., v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42 (1st Cir. 2009) ......................................... 40, 41, 43

*Ramey v. Martin–Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989) ...... 37

*Schwindt v. Cessna Aircraft Co.*, No. CV485–472, 1988 WL 148433 (S.D. Ga. Aug. 31, 1988) ........................... 37

*Sexton v. Potterfield*, No. 2:18-cv-04101, 2018 WL 5928060 (W.D. Mo. Nov. 13, 2018) ............................ 45, 47

*Tate v. Boeing Helicopters*, 140 F.3d 654 (6th Cir. 1998) ...................... 37

*Thomas v. VOA of North LA*, No. 17-cv-1196, 2017 WL 5762453 (W.D. La. Oct. 3, 2017) ........................ 45, 47, 48

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914 (5th Cir. Mar. 20, 2023) ............................ 20

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 3-20-CV-02112, 2022 WL 837495 (N.D. Texas Mar. 21, 2022) ................ 20

*United States v. Orleans*, 425 U.S. 807 (1975) ............................ 27, 28

Appellate Case: 23-2443     Page: 8     Date Filed: 07/27/2023 Entry ID: 5300239

*United States v. Todd*, 245 F.3d 691 (8th Cir. 2001) ........................ 13, 32

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) ............................. 9, 16

*Wullschleger v. Royal Canin, U.S.A. Inc.*,

   953 F.3d 519 (8th Cir. 2020) ............................................................ 40

*Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940) ............ 12, 33

## Statutes

28 U.S.C. § 1331 ......................................................................................ii, 6

28 U.S.C. § 1442 ....................................................................ii, 1, 6, 9, 27

28 U.S.C. § 1447 ............................................................................................1

42 U.S.C. § 405 ........................................................................................... 44

42 U.S.C. § 421 ..................................................... 5, 9, 10, 11, 17, 18, 42

## Rules and Regulations

20 C.F.R. § 404.1512 ........................................................................... 5, 17, 33

20 C.F.R. § 404.1519 ................................................................................ 34, 41

20 C.F.R. § 404.1519f .................................................................................... 34

20 C.F.R. § 404.1519g ................................................................... 24, 34, 46

20 C.F.R. § 404.1519n .................................................................................... 25

20 C.F.R. § 404.1519p ................................................................... 22, 37, 38

20 C.F.R. § 404.1519t .................................................................................... 22

20 C.F.R. § 404.1603 ............................................................................. 5, 33

20 C.F.R. § 404.1620 .................................................................................... 33

20 C.F.R. § 404.1690 .................................................................................... 25

POM DI 39542.005 ............................................................................... 13, 21

POM DI 39542.205 ......................................................................... 10, 13, 22

POMS DI 22505.003 ............................................................................ 24, 46

Appellate Case: 23-2443   Page: 9   Date Filed: 07/27/2023 Entry ID: 5300239

POMS DI 22510.001..................................................................24, 46

POMS DI 22510.010.....................................................................24

POMS DI 39542.001.....................................................................21

POMS DI 39542.005.................................................10, 18, 21, 37, 46

POMS DI 39542.205.........................................................10, 22, 24, 46

POMS DI 39542.215.....................................................................22

POMS DI 39542.235.................................................................10, 22, 46

POMS DI 39569.200.....................................................................24

POMS DI 39569.300................................................................24, 46

POMS DI 39569.600................................................................23, 25

Appellate Case: 23-2443    Page: 10    Date Filed: 07/27/2023 Entry ID: 5300239

## JURISDICTIONTAL STATEMENT

28 U.S.C. § 1447(d) confers jurisdiction over this appeal on the United States Court of Appeals for the Eighth Circuit. "[A]n order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). Appellants removed the State court cases pursuant to 28 U.S.C. § 1442, therefore, this Court has jurisdiction over the appeals. App. 150, 296; R. 23-2407, Doc. 32, at 4; R. 23-2443, Doc. 14, at 2. *See Graves v. 3M Co.*, 17 F.4th 764, 767 (8th Cir. 2021) ("We have jurisdiction to review remand orders when cases have been removed pursuant to § 1442."); *see also BP P.L.C. v. Mayor and City Council of Baltimore*, -- U.S. --, 141 S. Ct. 1532, 1538 (2021) (finding the entire district court order granting remand to be reviewable on appeal after defendants' notice of removal cites 28 U.S.C. § 1442 as one of its grounds for removal).

The appeals are timely pursuant to FRAP 4(a)(1)(B)(iv) because the notices of appeal were filed within 60 days after entry of the district court's remand order and Appellants assert themselves as current or former United States officers or employees sued in their individual

1

capacity for an act or omission occurring in connection with duties performed on the United States' behalf. In *Ryan v. ELN Enterprises, LLC, d/b/a Midwest CES, et al.*, Appeal No. 23-2407, the district court's remand order was entered April 10, 2023, and Appellants timely filed their notice of appeal on June 9, 2023. App. 005. In *Graham v. ELN Enterprises, LLC, d/b/a Midwest CES, et al.*, Appeal No. 23-2443, the district court's remand order was entered May 25, 2023, and Appellants timely filed their notice of appeal on June 15, 2023. App. 169. This is a civil appeal taken as a matter of right pursuant to Federal Rule of Appellate Procedure 3(a). *Ryan* and *Graham* were consolidated pursuant to Federal Rule of Appellate Procedure 3(b)(2).

Appellate Case: 23-2443    Page: 12    Date Filed: 07/27/2023 Entry ID: 5300239

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether the district court erred in determining that Appellants were not "acting under" a federal officer or agency when performing consultative examinations, a task the Social Security Administration is otherwise statutorily mandated to perform.

- *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224 (8th Cir. 2012) *abrogated on other grounds by Minnesota by Ellison*, 63 F.4th 703 (8th Cir. 2023)

- *Cty. Bd. of Arlington Cty., VA v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021)

- *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia v. Johnson*, 790 F.3d 457 (3d Cir. 2015)

- *Adkins v. Schwartz*, No. 23-00018-CV-W-BP (W.D. Mo. March 20, 2023)

II.    Whether the district court erred in determining that there was no "causal connection" between Appellants' actions as a consultative examination servicer and the federal authority when the

basis for Appellees' petitions is that Appellants wrongfully performed as a consultative examination servicer.

- *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 (3d Cir. 2016)

- *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia v. Johnson*, 790 F.3d 457 (3d Cir. 2015)

- *Adkins v. Schwartz*, No. 23-00018-CV-W-BP (W.D. Mo. March 20, 2023)

III.     Whether the district court erred in determining that the court did not otherwise have jurisdiction over the case under federal question jurisdiction when federal law permeates the consultative examination process.

- *R.I. Fishermen's All., Inc., v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42 (1st Cir. 2009)

- *Gunn v. Minton*, 568 U.S. 251 (2013)

- *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)

Appellees applied for disability benefits from the SSA. App. 147-148, 295; R. 23-2407, Doc. 32, at 1-2; R. 23-2443, Doc. 14, at 1. SSA is obligated to perform disability determinations to decide whether a disability benefits applicant is disabled and, thus, entitled to benefits. 42 U.S.C. § 421(b). SSA, pursuant to federal statute and to ease the burden on the agency, contracts with DDS to assist in ascertaining whether an applicant is medically eligible to receive benefits. *See* 20 C.F.R. § 404.1603(c)(1) (stating that SSA contracts with DDS to perform CEs so that "disability determinations are made accurately and promptly"). DDS is an entity created by state law, fully funded by the federal government, and acts under the authority of the Missouri Department of Elementary and Secondary Education. App. 151, 295; R. 23-2407, Doc. 32, at 5; R. 23-2443, Doc. 14, at 1. In fulfilling its duties, SSA or DDS may direct an applicant to undergo a CE to obtain additional medical evidence so that SSA or DDS may make a disability determination. 42 U.S.C. § 421(j); 20 C.F.R. § 404.1512(b)(2).

SSA or DDS directed Appellees to undergo a CE performed by Appellants. App. 148, 295; R. 23-2407, Doc. 32, at 2; R. 23-2443, Doc. 14,

at 1. Appellants hire doctors as independent contractors to perform CEs. *Id.* Appellees were initially denied disability benefits and appealed. *Id.* On appeal, Appellees were found disabled and granted disability benefits. *Id.* Appellees sued Appellants in State court, generally asserting that Appellants conducted improper, incomplete, or unlawful CEs and made false statements regarding the extent, nature, and results of their examinations, allegedly resulting in Appellees delayed receipt of benefits. App. 149-150, 296; R. 23-2407, Doc. 32, at 3-4; R. 23-2443, Doc. 14, at 2.

Appellants removed the State court actions to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442, and the federal question statute, 28 U.S.C. § 1331. App. 150, 296; R. 23-2407, Doc. 32, at 4; R. 23-2443, Doc. 14, at 2.

Appellees filed motions to remand, which the district courts granted for similar reasons. For a party to successfully invoke federal officer removal under 28 U.S.C. § 1442, they must establish that "(1) it acted under the direction of a federal officer; (2) there is a causal connection between their actions and the official authority; (3) they have a colorable federal defense to the claims, and (4) they are

6

'person[s]' within the meaning of the statute." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). The district courts determined the first two elements required to invoke federal officer removal were not met, finding Appellants were not "acting under" a federal officer because Appellants do not contract directly with SSA, SSA does not require Appellants, specifically, to perform CEs, and there is no causal connection between the charged conduct and the federal authority because Appellees' claims arise from negligence by Appellants in the process and performance of CEs. App. 159-160, 298-299; R. 23-2407, Doc. 32, at 13-14; R. 23-2443, Doc. 14, at 4-5. The district courts did not evaluate elements three and four. *Id.*

Further, the district courts denied removal based on the federal question statute because the courts found Appellees' petitions assert only state law claims, raise no allegations related to federal law, and seek no relief under federal law. App. 164, 300; R. 23-2407, Doc. 32, at 18; R. 23-2443, Doc. 14, at 6.

After the briefing was submitted for the motions to remand in *Graham* and *Ryan*, Chief District Court Judge Phillips and District Court Judge Kays denied motions to remand in cases nearly identical to

*Graham* and *Ryan*, creating an intra-district split in the Western District of Missouri on whether Appellants or similarly situated parties are entitled to federal officer removal. *Compare Adkins v. Schwartz*, No. 23-00018-CV-W-BP (W.D. Mo. March 20, 2023) (doc. 19) (denying motions to remand in six cases, *Murphy v. Neill*, No. 23-00012-CV-W-BP, *Mark v. Neuman*, No. 23-00013-CV-W-BP, *Avila v. Thornburgh*, No. 23-00017-CV-W-BP, *Vest v. Barnett*, No. 23-00027-CV-W-BP, *Claxton v. Irlam*, No. 23-00055-CV-W-BP)), *and O'Connor v. Smith*, No. 22-00746-CV-DGK (W.D. Mo. June 2, 2023) (doc. 20) (denying motion to remand) *with Graham v. ELN*, No. 22-00270-CV-SRB (W.D. Mo. May 25, 2023) (doc. 14) (granting motion to remand), *and Ryan v. ELN*, No. 22-cv-00736-HFS (W.D. Mo. April 10, 2023) (doc. 32). Each of these cases contain practically identical facts and practically identical claims, the sole difference being that where motions to remand have been granted, the defendants are Appellants, and where motions to remand have been denied, the defendant is the doctor employed by Appellants.

Appellate Case: 23-2443    Page: 18    Date Filed: 07/27/2023 Entry ID: 5300239

## SUMMARY OF THE ARGUMENT

The district court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The words "acting under" as used in that statute must be "liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152. Whether a private entity is assisting a federal superior carry out the federal superior's duties or tasks can be answered with a simple test—did the private entity help the Government produce an item that the Government needs? *Id.* at 153. More plainly—did the private entity perform a job that, in the absence of the private entity's performance, the Government itself would have had to perform? *Id.* at 154. Here, both questions can be answered with a resounding "yes."

Under the Social Security Act (the "Act"), the SSA issues disability benefits. 42 U.S.C. § 421. The Act obligates SSA to make disability determinations to issue such benefits. *Id.* at § 421(b). If there is insufficient medical evidence, SSA is obligated to obtain additional evidence through CEs which are specifically permitted to be performed

9

by private entities such as Appellants. *Id.* at § 421(j); POMS DI 39542.005 (stating that Federal law, regulations and other written guidelines which apply to DDS also apply to a contractor); POMS DI 39542.205 (providing introduction to CE contracts).

To reduce the disability determination burden, the Act permits States to create DDS which takes on the SSA's obligations to make initial disability determinations. 42 U.S.C. § 421(a). DDS is obligated to follow all SSA rules and regulations when making a determination. *Id.* § 421(a)(2) (stating that DDS is obligated to follow SSA rules and regulations when making disability determinations); POMS DI 39542.235 (stating that CEs must be conducted according to SSA standards). Under SSA rules and regulations, DDS may contract with private entities to perform CEs. POM DI 39542.205. Contracted entities must perform CEs pursuant to all SSA rules and regulations. POMS DI 39542.005. Importantly, States may opt out of performing any or all initial disability determinations, at which point the SSA is again obligated to make such a determination. 42 U.S.C. § 421(a)(1).

Here, Appellees were ordered by DDS, or in Ryan's case, an ALJ working for SSA, to be seen by a physician working as a subcontractor

10

for Appellants to obtain a CE. App. 148, 295; R. 23-2407, Doc. 32, at 2; R. 23-2443, Doc. 14, at 1. Under the Act, had Appellants not provided DDS or the ALJ with the CE, DDS or the ALJ would have otherwise had to obtain the CE themselves; and ultimately, had Missouri opted out of making initial disability determinations, SSA would have been otherwise obligated to obtain the CE. 42 U.S.C. § 421(a)(1). Appellants are not simply following Government regulations, Appellants are plainly providing the Government with a service that it needs; further, Appellants are plainly providing the Government with a service that it otherwise is statutorily obligated to provide itself. Thus, Appellants are assisting a federal superior carry out the federal superior's duties or tasks and are "acting under" a federal superior.

Second, Appellants satisfy the "nexus" or "causation" test for federal officer removal because Appellees' allegations arise from actions taken by Appellants while Appellants were performing a duty the Government is otherwise statutorily obligated to perform. To meet the "for, or relating to" requirement of federal officer removal, it is sufficient for there to be a "connection or association" between the act in question and the federal office. *See Minnesota by Ellison v. Am. Petroleum Inst.*,

11

63 F.4th 703, 715 (8th Cir. 2023) (adopting lower "relates to" standard). This element is satisfied if Appellants demonstrate their relationship to Appellees is "derived solely from their official duties." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969). There is no serious doubt that Appellants relationship to Appellees arose only because Appellants were conducting CEs for DDS or SSA. App. 148, 295; R. 23-2407, Doc. 32, at 2; R. 23-2443, Doc. 14, at 1. Thus, this element is satisfied.

Finally, the district courts declined to address the final element of federal officer removal—whether Appellants can assert a colorable federal defense. App. 160, 299; R. 23-2407, Doc. 32, at 14; R. 23-2443, Doc. 14, at 5. *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940) enshrined the concept of derivative sovereign immunity, otherwise known as the government contractor defense, into law. *Id.* at 20-21. As a subcontractor performing work in a clear line of authority derived from the federal government, Appellants assert a colorable argument to entitlement to derivative sovereign immunity. *See Adkins*, No. 23-00018-CV-W-BP (Doc. 19, at 7).

"For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be

12

Appellate Case: 23-2443     Page: 22     Date Filed: 07/27/2023 Entry ID: 5300239

successful before removal is appropriate." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. We therefore do not require the officer virtually to win his case before he can have it removed." *Jefferson Cnty., AL v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up).

SSA, pursuant to authority granted by the Act, specifically authorizes parties such as Appellants to perform CEs on SSA's behalf. POM DI 39542.205. Appellants are subject to pervasive SSA regulation and oversight, and perform a task the Government is otherwise obligated to perform itself. POM DI 39542.005. Appellants have satisfied the *prima facie* elements of derivative sovereign immunity and are entitled to try this defense in a federal forum. Categorically excluding such a party is contrary to the purposes of immunity and the federal officer removal statute.

Appellants are acting under a federal officer by providing CEs, a task the federal government is otherwise statutorily obligated to perform. Appellees complained of conduct—that physicians working for Appellants were allegedly negligent or fraudulent in the performance of

13

CEs—is inherently related to Appellants' performance of CEs. Finally, Appellants assert a colorable federal defense by asserting Appellants are entitled to derivative sovereign immunity because Appellants are authorized by the federal government to perform CEs and that Appellants' actions satisfied the requirements in SSA's regulations.

The Court should reverse the judgment.

Appellate Case: 23-2443   Page: 24   Date Filed: 07/27/2023 Entry ID: 5300239

<u>ARGUMENT</u>

## I.  Standard of Review.

Appellate Courts review a district court's decision to remand *de novo. Minnesota by Ellison*, 63 F.4th at 709.

## II.  Federal Officer Removal is Proper.

Federal officer removal under 28 U.S.C. § 1442(a)(1) requires a private entity to "establish that (1) it acted under the direction of a federal officer, (2) there is a connection between the claims and the official authority, (3) the defendant has a colorable federal defense to the plaintiffs' claims, and (4) the defendant is a 'person,' within the meaning of the statute." *Minnesota by Ellison*, 63 F.4th at 714. The fourth element is not in dispute.

### A.  Appellants act under a federal officer.

"While not limitless, '[t]he words 'acting under' are broad,' and the Supreme Court 'has made clear that the statute must be 'liberally construed.''" *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) *abrogated on other grounds by Minnesota by Ellison*, 63 F.4th 703 (8th Cir. 2023) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007)). "To satisfy the 'acted under' requirement of § 1442(a)(1), a private person's actions 'must involve an effort to *assist*, or

15

to help *carry out*, the duties or tasks of the federal superior.'" *Graves*, 17 F.4th at 769 (quoting *Jacks*, 701 F.3d at 1230) (emphasis in original). "[T]he help or assistance necessary to bring a private person within the scope of the statue does *not* include simply *complying* with the law." *Watson*, 551 U.S. at 152 (2007) (emphasis in original). A point that distinguishes whether a private entity is simply complying with the law or is acting under a federal superior is whether the private entity "is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id.* at 153. A private entity acts under a federal superior when performing a job that "the Government itself would have had to perform." *Id.* at 154; *Jacks*, 701 F.3d at 1234 ("As a private contractor, [appellant] is helping the government to produce an item that it needs . . ."); *Graves*, 17 F.4th at 769; *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021).

16

### 1. Appellants provide the Federal Government with a service the Federal Government is otherwise statutorily obligated to provide itself.

Under the Act, the SSA issues disability benefits, pursuant to which SSA is obligated to perform disability determinations to determine whether a disability benefits applicant is considered disabled under the Act. 42 U.S.C. § 421(b). Where there is insufficient medical evidence to make a disability determination, the SSA is obligated under the Act to obtain additional medical evidence through CEs performed by private entities such as Appellants. *Id.* at § 421(j). Appellants, and the doctors employed by Appellants, do not make disability determinations, they purely provide SSA with a CE Report which provides SSA with the additional medical evidence SSA is obligated to obtain. 20 C.F.R. § 404.1512.

To relieve the burden of making disability determinations on the SSA, the Act permits States to create DDS which takes on the SSA's obligation to make initial disability determinations. 42 U.S.C. § 421(a). Under the Act, DDS must make disability determinations in accordance with applicable federal statutes and pursuant to the standards and criteria contained in regulations or other written guidelines of the

17

Commissioner of Social Security. *Id.* The Commissioner of Social Security, under the Act, shall promulgate regulations specifying performance standards and administrative requirements and procedures to be followed in performing the disability determination function to assure effective and uniform administration of the disability insurance program throughout the United States. *Id.* These obligations flow to any CE provider subcontractors that DDS enlists to perform CEs. POMS DI 39542.005. Importantly, States may opt out of performing any or all initial disability determinations, at which point the SSA is again obligated to make such a determination. 42 U.S.C. § 421(a)(1).

Here, Appellees were ordered by DDS, or in Ryan's case, an ALJ working for SSA, to go to Appellants to obtain a CE to assist DDS or the ALJ to make an appropriate disability determination. App. 148, 295; R. 23-2407, Doc. 32, at 2; R. 23-2443, Doc. 14, at 1. Had Appellants not provided DDS or the ALJ with the CE, DDS or the ALJ would have otherwise had to obtain the CE themselves. 42 U.S.C. § 421(a)(1). Appellants are plainly providing the Government with a service that it otherwise is statutorily obligated to provide itself—not simply following

18

regulations. Appellants are assisting a federal superior carry out the federal superior's duties or tasks and are, thus, "acting under" a federal superior.

## 2. Appellants' subcontractor status is irrelevant because Appellants are subject to numerous Federal Government rules and oversight.

The district courts erred by asserting that Appellants do not act under a federal officer because Appellants are subcontractors who do not contract directly with SSA. In a nearly identical case to the case at bar, where a physician subcontractor of Appellants was permitted to remove based on federal officer removal, Chief District Court Judge Phillips held: "[p]laintiff's arguments regarding (1) the degree of SSA's direct supervision of [subcontractors] and (2) the lack of a contract between [subcontractors] and SSA simply play no part in this analysis." *Adkins*, No. 23-00018-CV-W-BP (Doc. 19, at 5).

Here, the district courts have mandated a requirement for federal officer removal that is contrary to the law. *See Cty. Bd. of Arlington Cty., VA v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021) (applying standard "acting under" analysis to subcontractor because government contract expressly contemplated subcontractors

Appellate Case: 23-2443    Page: 29    Date Filed: 07/27/2023 Entry ID: 5300239

and provided various mechanisms of government supervision of these subcontractors); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *3 (5th Cir. Mar. 20, 2023) (finding that subcontractor was "acting under" federal superior); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 3-20-CV-02112, 2022 WL 837495, at *3 (N.D. Texas Mar. 21, 2022) ("While [defendant] is a subcontractor and not technically in privity of contract with the government, that does not change the ["acting under"] analysis. . . . [T]he federal officer removal statute imposes no requirement that such a contract exist."); *In re National Prescription Opiate Litigation*, No. 1:17-md-2804, 2023 WL 166006, at *4 (N.D. Ohio Jan. 12, 2023) (finding subcontractor's "role as subcontractors did not exclude them from the scope of the "acting under" requirement.").

Under the district courts' rule, no subcontractor could remove a case under federal officer removal if there is not a contract directly between the subcontractor and the federal government. Beyond being contrary to the purpose of the federal officer removal statute—to provide the opportunity to test federal defenses in a federal forum—this rule is inapplicable where, as here, Appellants are providing a service

20

that the Government would otherwise have to provide itself. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia v. Johnson*, 790 F.3d 457, 468-69 (3d Cir. 2015) ("Unlike the companies in *Watson*, the [defendant] provides a service the federal government would itself otherwise have to provide."); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (finding that defendant acted under a federal officer because it produced a product that, in the absence of defendants, the government would have had to produce itself). However, regardless of if solely providing a service the Government is otherwise obligated to provide is alone enough to satisfy the "acting under" requirement, SSA rules and regulations contemplate the existence of subcontractors and provide mechanisms of government oversight over these subcontractors.

SSA rules state exactly what functions may be contracted out by DDS and provide that the terms of all contracts must provide for SSA "oversight and control." POMS DI 39542.001; 39542.005. POMS explicitly considers the contracting out of the CE function by providing numerous rules regulating such contracts. *See* POMS DI 39542.005 (stating that Federal law, regulations and other written guidelines

21

which apply to DDS also apply to a contractor); POMS DI 39542.205 (providing introduction to CE contracts); POMS DI 39542.215 (listing the required elements to be included in a CE contract); POMS DI 39542.235 (stating that CEs must be conducted according to SSA standards). Additionally, DDS must obtain explicit approval from SSA of any subcontract with a CE provider. POMS DI 39542.205.B.3.

Further, SSA maintains oversight and control over the CE program. *See, e.g.*, 20 C.F.R. § 404.1519p(a) ("[The SSA] will review the report of the CE to determine whether the specific information requested has been furnished."); § 404.1519p(b) (SSA will request additional information if CE Report is inadequate); § 404.1519p(d) ("[The SSA] will perform ongoing special management studies on the quality of CEs purchased from major medical sources and the appropriateness of the examinations authorized."); §§ 404.1519t(a)-(c) ("[The SSA] will also monitor . . . the product of the CEs obtained. This monitoring may include reviews by independent medical specialists under direct contract with SSA . . . [the SSA] will also perform ongoing special management studies of the quality of CEs purchased from key providers and other sources and the appropriateness of the

22

examinations authorized.") In addition to SSA's general obligations to maintain the integrity of its programs, the Office of the Inspector General, a federal agency, is responsible for investigating violations of SSA programs and operations, including "suspected violations involving disability cases processed by federal employees, DDS employees, and contractors." POMS DI 39569.600.

Additionally, the district courts rely on *Dyer v. Crowley Logistics, Inc.*, 22-cv-03246-SRB, 2022 WL 16636233, at *1 (W.D. Mo. Nov. 2, 2022) to assert that because the statutes do not mandate the selection of a particular doctor, Appellants are not acting under a federal officer—this assertion is misplaced. In *Dyer*, the Government contracted motor carrier entered into subcontracts with other companies to actually perform the Government's delivery. *Id.* at *1. The *Dyer* court determined that the Government contracted motor carrier was not required to select a particular subcontractor, thus, the Government contracted motor carrier was not "acting under" the Government when selecting the subcontractor. *Id.* at *3.

The cases at bar are much more analogous to *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224 (8th Cir. 2012), wherein a contractor

23

was permitted to remove because any discretion given to the contractor was contemplated by the Government. To deny removal solely because [defendant] is allowed discretion within a minute area contemplated by the governmental [p]lan defies the overall purpose and thrust of the federal officer removal statute generally." *Id.* at 1234. At all times, Appellants are subject to SSA oversight, provide a delegated service contemplated by the SSA's rules and regulations, and submit to all other applicable SSA rules and regulations.

Unlike in *Dyer*, where the Government contractor had discretion in who to choose for a subcontractor, here, Appellants are subject to pervasive regulations and rules which determine whom Appellants can hire to perform the CEs. *See* 20 C.F.R. § 404.1519g; POMS DI 22510.010 (detailing who is qualified to perform CEs); POMS DI 22510.001.A.5 (defining a qualified CE source); POMS DI 22505.003 (defining acceptable medical sources); POMS DI 39569.300 (providing policy of monitoring credentials of CE source); POMS DI 39542.205.B.3 (stating that DDS must obtain explicit approval from SSA of any subcontracts for CE services). Further, SSA is ultimately obligated for the integrity of the CE process. POMS DI 39569.200. Further, violations

24

of the SSA's rules and regulations are investigated by the Office of the Inspector General and SSA is obligated to take over the disability determination function from the state if DDS fails to provide quality determinations. POMS DI 39569.600; 20 C.F.R. § 404.1690.

Additionally, while Appellants may have limited discretion in the actual drafting of the CE Reports, Appellants have little discretion in how to perform CEs or what must be included in CE Reports—there are dozens of rules governing the performance of CEs. *See* POMS DI 22510.000-22510.114 (detailing precisely what must occur during a CE); *see also* 20 C.F.R. § 404.1519n (detailing the elements of a complete CE and what must be included in the CE Report). As Chief District Judge Phillips said: "the degree of SSA's direct supervision of [Appellants] . . . simply play[s] no part in this analysis." *Adkins*, No. 23-00018-CV-W-BP (Doc. 19, at 5).

SSA is statutorily obligated to obtain CEs when making disability determinations. This obligation flows from SSA to DDS who, in turn, retain Appellants to perform CEs in the manner required by SSA rules and regulations. The retention of Appellants to perform CEs is contemplated by SSA's rules and regulations which maintain that SSA

25

is responsible for overseeing its programs. Fundamentally, and simply, Appellants provide a service that the Government is otherwise statutorily obligated to obtain itself and Appellants are obligated to follow the Government's rules and regulations when providing that service, thus, Appellants are acting under a federal officer.

### 3. The District Court Erred in Relying on Case Law where the Private Entity was not Performing an Action the Federal Government is Otherwise Obligated to Perform.

The district court in *Ryan* relies heavily on *Adelman v. Discover Card Servs., Inc.*, 915 F.Supp. 1164 (D. Utah 1996) and *Doe v. BJC Health System*, 4:22-cv-919-RWS, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023), to find that Appellants were not "acting under" a federal officer, however, neither case involves the situation at bar—a private entity performing an action the Federal Government is otherwise obligated to perform.

First, the district court relies on *Adelman* for support that Appellants were not "acting under" a federal officer, apparently because Appellants could not be considered "employees of the United States" under the US tax code or privacy law. App. 153; R. 23-2407, Doc. 32, at 7. The court's analysis is misguided. The federal officer removal statute

26

does not require the party attempting removal via the statute to be an employee of the United States, rather, the statute is applicable to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity . . ." 28 U.S.C. § 1442(a)(1). There is simply no requirement that Appellants be an "employee of the United States."

Further, *Adelman*, a Utah District Court case from 1996 that has never been cited as authority in any other case and does not involve federal officer removal, was flawed and cannot be properly relied on. *Adelman* involved allegations that an employee of Utah's DDS, a former spouse of the plaintiff's current spouse, wrongfully accessed the plaintiff's social security and tax records while working at DDS. 915 F.Supp. at 1164. The plaintiff sued the United States alleging liability under the tax code and privacy law. *Id.* The *Adelman* court determined that under the tax code, a DDS employee is not an employee of the United States. *Id.* at 1165. In support, *Adelman* relies on *United States v. Orleans*, 425 U.S. 807 (1975) which found that a community action

27

center was not a federal agency under the Federal Tort Claims Act or the Economic Opportunity Act.

*United States v. Orleans* is plainly inapplicable. *Orleans* is comparable to *Watson*—a community action center, fully funded by the federal government under the Economic Opportunity Act of 1964, sponsored an Opportunity Center which arranged for an outing for children. 425 U.S. at 809-10. One of the children was injured during the outing and sued. *Id*. The Court states that: "The [Federal] Tort Claims Act was never intended, and has not been construed by this Court, to reach employees or agents of all federally funded programs that confer benefits on people." *Id*. at 814. The Court then proceeds to walk through exceptions to the FTCA's waiver of sovereign immunity. *Id*. This analysis is not on point because this is not an FTCA action. Further, much like *Watson*, the *Orleans* court determined that the community action center and opportunity center purely acted in the realm of federal regulation and did not fulfill a function the government would otherwise have to perform. As explained, the current case is fundamentally different. Appellants are fulfilling a function the government is otherwise statutorily obligated to perform.

28

*Adelman* uses the Federal Tort Claims Act and *United States v. Orleans* to ignore the nature of the DDS' relationship with SSA. Rather than focus on the statutorily mandated function DDS and its contractors perform, the court focuses on supervision to find that employees of DDS are not "employees of the United States" under the US tax code.

The district court further relies on *Doe v. BJC Health System*, 4:22-cv-919-RWS, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023). However, again this case does not involve a situation where the contractor is fulfilling a task the government is otherwise obligated to perform. *Id.* at *4 ("BJC is not assisting or helping a federal officer carry out her duties or tasks by creating a website and patient portal to allow patients online access to medical information . . . . [T]he statute neither authorizes nor obligates the federal government to create such an infrastructure itself."). Here, Appellants are fulfilling the SSA's duty to obtain additional medical evidence to assist in making disability determinations. *BJC* is inapposite and should not be relied on.

It was plain error for the district court to rely on these cases whose analyses are wholly inapplicable.

Appellate Case: 23-2443    Page: 39    Date Filed: 07/27/2023 Entry ID: 5300239

### B. Appellees claims relate to Appellants official authority.

The district courts erred in finding that because a federal officer did not direct the specific conduct alleged in Appellees' Petitions, the conduct is not related to Appellees' official authority. The second element of the federal officer removal statute, causal connection, requires only a "connection or association" between the act in question and the federal office. *See Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (adopting lower "relates to" standard). The "or relating to" standard was intended to "broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* (quoting *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 624 (6th Cir. 2016)). This element is satisfied if Appellants demonstrate their relationship to Appellees is "derived solely from their official duties." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969); *see also Adkins*, No. 23-00018-CV-W-BP (Doc. 19, at 6).

To satisfy the causation element, "[i]t is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the [defendant] and the [federal officer or agency]." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016). It is not necessary

Appellate Case: 23-2443    Page: 40    Date Filed: 07/27/2023 Entry ID: 5300239

for "complained-of conduct [to be] done at the specific behest of the federal officer or agency." *Id.* (citing *Defender Ass'n*, 790 F.3d at 470 ("[W]e disagree that the [defendant] is required to allege that the complained-of conduct *itself* was at the behest of a federal agency.") (emphasis in original)). "Whether a federal officer defendant has completely stepped outside of the boundaries of its office is for a federal court, not a state court, to answer." *Defender Ass'n*, 790 F.3d at 472 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431-32 (1999); *Willingham*, 395 U.S. at 409).

Appellees' claims arise from alleged negligence by Appellants in the process and performance of the CEs. But for Appellants performance of the CEs, Appellees claims would not have occurred. In other words, the CE Reports were produced only because Appellants were fulfilling SSA's obligations to conduct CEs. This satisfies the causation test. To answer whether Appellants were negligent, Appellants actions must be examined and compared to the SSA's standards. Whether this is the case is for a federal, not a state court, to answer.

Appellate Case: 23-2443    Page: 41    Date Filed: 07/27/2023 Entry ID: 5300239

### C. Appellants assert a colorable federal defense.

Neither district court reached the final element—whether Appellants assert a colorable federal defense in derivative sovereign immunity; however, it is apparent that they have.

### 1. Appellants are entitled to derivative sovereign immunity.

"For a defense to be considered colorable, it need only be *plausible*; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) (emphasis added); *Willingham*, 395 U.S. at 407 (a contractor "need not win his case before he can have it removed."); *Acker*, 527 U.S. at 431 (finding colorable federal defense "although we ultimately reject it"). "[A]n asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020).

It cannot be overstated that Appellants needs not conclusively prove they will succeed on the defense of derivative sovereign immunity to seek removal. One of the purposes of the federal officer removal statute is simply to ensure that federal officers are provided a federal

32

forum to litigate defenses arising out of their duty to enforce federal law. *See Willingham*, 395 U.S. at 407. "This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* "The federal officer removal statute is to be liberally construed, and thus the typical presumption against removal does not apply." *Buljic*, 22 F.4th at 738 (quotations omitted).

Under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940), a government contractor may assert derivative sovereign immunity to defeat a plaintiff's claim "if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326, 342 (4th Cir. 2014) (citing *Yearsley*, 309 U.S. at 20-21 (1940)).

The SSA and DDS contract with providers like Appellants to perform CEs so that "disability determinations are made accurately and promptly." 20 C.F.R. §§ 404.1603(c)(1), 404.1620(b). As stated, Appellants were directed to perform CEs and did so in accordance with SSA rules and regulations. *See* 20 C.F.R. § 404.1512(b)(2) (providing the SSA may ask an applicant to attend a consultative examination at the

33

SSA's expense in order to gather medical data to assess a disability); §
404.1517 (providing that the SSA will pay for any CE ordered by the
SSA); § 404.1519 (providing that the rules and procedures for a CE set
forth in §§ 404.1519a and 404.1519b are applicable at all levels of
review); § 404.1519f (providing CEs only involve the specific
examinations and tests needed to make a disability determination); §
404.1519g (defining "qualified" medical source for CEs); POMS DI
22510.000-22510.114 (detailing what must occur during a consultative
examination). Because Appellants performed the CEs pursuant to
government rules and regulations and authority to perform the CE was
validly conferred by the SSA, the *prima facie* elements of the *Yearsley*
defense are met.

Granting derivative sovereign immunity to Appellants for work
performed pursuant to a contract with the federal government is
consistent with the core purpose of the defense; namely, "to avoid
unwarranted timidity in performance of public duties, ensuring that
talented candidates are not deterred from public service, and
preventing the harmful distractions from carrying out the work of
government that can often accompany damages suits" because "the

most talented candidates will decline public engagements if they do not receive the same immunity enjoyed by their public employee counterparts." *Filarsky v. Delia*, 566 U.S. 377, 389-90 (2012) (quotations omitted). If Appellants are subject to suit from CEs performed for DDS or SSA, they will begin to decline such engagements and impede the disability adjudication process. Indeed, Chief District Court Judge Phillips expressly concluded that "suing the doctors performing the CE has as much potential to interfere with the federal government's operations and demonstrate hostility to the federal government's actions as would a suit against the entities directly contracting with SSA, or a suit against SSA itself." *Adkins*, No. 23-CV-00018-W-BP (Doc. 19, at 6).

Additionally, the objectivity of CEs is in jeopardy because CE providers will be forced to conduct CEs in a way that ensures SSA benefits are awarded to avoid risking a lawsuit if benefits are denied. Plaintiff seeks to create dangerous precedent by opening the door for countless applicants to sue CE providers if their SSA application is denied. Appellants are entitled to a federal forum for a federal court to determine if Appellants' actions satisfied the requirements in SSA's

rules and regulations, and are thus, entitled to derivative sovereign immunity.

### 2. Appellants' status as a subcontractor for DDS is irrelevant to removal.

Courts across the country have found a contractor's status as a subcontractor to be irrelevant to the derivative sovereign immunity defense. In *LaForge v. ECC Operating Svcs.*, the court rejected the argument that a defendant subcontractor could not avail himself of the government contractor defense merely because "it did not itself contract directly with the government." No. CIV.A 07-523, 2010 WL 497657, at *1 (E.D. La. Feb. 5, 2010); *see also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205-06 (5th Cir. 2009) ("The Supreme Court's decision in *Yearsley* does not require a . . . traditional agency relationship with the government. . . . Most notably, the *Yearsley* court did not examine the relationship between the contractor defendant and the government to determine whether the contractor defendant was in fact acting as an agent or whether the contractor acted within the scope of any agency relationship.").

The *LaForge* court explained that denying subcontractors the government contractor defense is "at odds with the purpose of the

Appellate Case: 23-2443   Page: 46   Date Filed: 07/27/2023 Entry ID: 5300239

government contractor defense." *Id*. Indeed, the Third and Fourth Circuits do not preclude subcontractors from asserting the defense, *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3d Cir. 1990); *Ramey v. Martin–Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989)), and the Fifth Circuit has on several occasions suggested that the defense is applicable to subcontractors. *See, e.g.*, *Humphries v. Elliott Co.*, 760 F.3d 414 (5th Cir. 2014) (holding that a subcontractor had not waived the government contractor defense). This opinion is shared by courts in other Circuits as well. *See, e.g.*, *Tate v. Boeing Helicopters*, 140 F.3d 654 (6th Cir. 1998); *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066A, 2013 WL 5723324, at *10 (W.D.N.Y. Oct. 21, 2013); *Griffin v. JTSI, Inc.*, No. CIV. 08-00242 ACK, 2009 WL 8761211, at *12 (D. Haw. July 28, 2009); *Schwindt v. Cessna Aircraft Co.*, No. CV485–472, 1988 WL 148433 (S.D. Ga. Aug. 31, 1988).

Further, as stated in Section I, *supra*, Appellants are subject to pervasive SSA regulation and oversight. *See* POMS DI 39542.005 (stating that Federal law, regulations and other written guidelines which apply to DDS also apply to a contractor); 20 C.F.R. § 404.1519p(a) ("[The SSA] will review the report of the CE to determine whether the

37

specific information requested has been furnished."); § 404.1519p(b) (SSA will request additional information if CE Report is inadequate); § 404.1519p(d) ("[The SSA] will perform ongoing special management studies on the quality of CEs purchased from major medical sources and the appropriateness of the examinations authorized."). Categorically excluding a party subject to such regulation and who performs a task the Government is otherwise obligated to perform itself, is contrary to the purposes of immunity. Appellants are entitled to try this defense in federal court.

## III. Appellants can remove based on federal question jurisdiction.

Appellees dependence on federal law permeates their allegations such that their claims cannot be adjudicated without reliance on and explication of the federal laws and regulations, thus, federal question removal is proper.

"Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002). The artful pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to

Appellate Case: 23-2443     Page: 48     Date Filed: 07/27/2023 Entry ID: 5300239

determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented."). "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted). Thus, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable &*

39

*Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (same). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314).

### A. Appellees' claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain.

First, Appellee's state law claims "necessarily raise" a federal question because "[its] asserted right to relief under state law requires resolution of a federal question." *R.I. Fishermen's All., Inc., v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *see also Wullschleger v. Royal Canin, U.S.A. Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) ("The face of plaintiffs' complaint gives rise to federal question jurisdiction and plaintiffs' isolated focus on their alleged state law claims is nothing more than an apparent veil to avoid federal jurisdiction.").

As pleaded, Appellee's claims require establishing that (1) Appellants breached duties arising solely under federal law or regulations and SSA guidelines, (2) whether Appellants' actions caused the DDS to issue an Unfavorable Decision, and (3) the existence and scope of the SSA's duties purportedly owed to applicants. *See also* 20 C.F.R. §§ 404.1519; 404.1519a-t (governing CEs and SSA's oversight of the same). Based on this, "it is not logically possible for [Appellees] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Appellants to conduct the CE differently or whether Appellants assumed the SSA's purported duties owed to applicants. *R.I. Fishermen's All.*, 585 F.3d at 49. "That is enough to make out a federal question." *Id*.

Second, this federal issue is "actually disputed" because the parties disagree as to Appellants' compliance with federal regulations and guidance, they disagree as to the existence and scope of duties owed by the DDS, SSA and/or Appellants, and they disagree as to whether Appellants' alleged actions caused any damages based on the DDS' Unfavorable Decision in the SSA proceeding (and whether such

Appellate Case: 23-2443      Page: 51      Date Filed: 07/27/2023 Entry ID: 5300239

damages are even recognizable). Indeed, these federal issues are the "central point of dispute." *Gunn*, 568 U.S. at 259.

Third, the federal issue presented by Appellee's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted).

Appellee's theories of Appellants' liability necessarily require that a Court determine the existence and scope of the SSA's and/or Appellants' obligations under federal law because SSA disability proceedings are first and foremost a product of federal law and if Appellants did not perform the CE, the SSA is statutorily obligated to perform it itself. *See* 42 U.S.C. § 421(a)(2) (stating that if not performed by DDS, disability determinations "shall be made by the Commissioner of Social Security"). Appellee's theories of Appellants' liability thus "involve aspects of the complex federal regulatory scheme applicable to"

Appellate Case: 23-2443     Page: 52     Date Filed: 07/27/2023 Entry ID: 5300239

the SSA and disability insurance proceedings, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [disability benefits] regulation to satisfy the requirement of importance to the federal system as a whole." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

Furthermore, "minimizing uncertainty over" the SSA's and physicians' obligations throughout SSA disability insurance benefits proceedings "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *R.I. Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the SSA as well as sovereign immunity, "and the importance of those regulations to the Congressional scheme, this case plainly falls within

43

the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare* Sys., Inc., 835 F.3d 167, 174 n.5 (1st Cir. 2016).

Fourth, and finally, the federal issue is also capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to SSA proceedings and decisions. *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States …."). Litigating this case in a state court runs the risk of the state court applying federal requirements and analyzing the duties of a federal agency inconsistently with the manner in which the federal agency tasked with reviewing disability insurance benefits applications—the SSA and its ALJs, as well as the federal courts reviewing ALJ decisions—apply them. If the SSA itself or an ALJ were sued, it would be entitled to remove this case to federal court. 28 U.S.C. § 1442(a). Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A. v. PPL Elec. Utilities Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (quoting *Grable*, 545 U.S. at 313).

Appellate Case: 23-2443     Page: 54     Date Filed: 07/27/2023 Entry ID: 5300239

Thus, removal of this action is appropriate because Appellee's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

## B. The district courts erred in finding that federal law does not permeate Appellees' claims.

The district courts erred by finding that Appellees claims do not raise a disputed and substantial federal issue because Appellants "were not subject to any federal directive and no issues of federal law or national concern have been raise which would require resolution by a federal court." App. 300; R. 23-2443, Doc. 14, at 6. Further, the district courts erred by citing *Sexton v. Potterfield*, No. 2:18-cv-04101, 2018 WL 5928060, at *2 (W.D. Mo. Nov. 13, 2018) and *Thomas v. VOA of North LA*, No. 17-cv-1196, 2017 WL 5762453, at *1 (W.D. La. Oct. 3, 2017) to find that because Appellees assert a claim for fraud or misrepresentation, which do not arise under federal law, Appellees do not present a federal question requiring resolution in federal court.

Contrary to the district courts' findings, and as thoroughly described in Section I, *supra*, in performing CEs, Appellants are subject

45

to pervasive federal regulation in its role of providing the Government with a service the Government would otherwise have to provide itself. SSA rules explicitly consider the contracting out of the CE function by providing numerous rules regulating such contracts. *See* POMS DI 39542.005 (stating that Federal law, regulations and other written guidelines which apply to DDS also apply to a contractor); POMS DI 39542.235 (stating that CEs must be conducted according to SSA standards). Additionally, DDS must obtain explicit approval from SSA of any subcontract with a CE provider. POMS DI 39542.205.B.3. Thus, Appellants are bound to perform CEs in accordance with the dozens of SSA rules detailing what must occur during a CE and who is qualified to perform a CE. POMS DI 22510.000-22510.114 (detailing what must occur during a consultative examination); 20 C.F.R. § 404.1519g; POMS DI 22510.010 (detailing who is qualified to perform CEs); POMS DI 22510.001.A.5 (defining a qualified CE source); POMS DI 22505.003 (defining acceptable medical sources); POMS DI 39569.300 (providing policy of monitoring credentials of CE source). It is necessary for a court to examine these rules to determine whether Appellants were negligent while performing the SSA's duties.

Appellate Case: 23-2443     Page: 56     Date Filed: 07/27/2023 Entry ID: 5300239

The district court's reliance on *Sexton v. Potterfield*, No. 2:18-cv-04101, 2018 WL 5928060 (W.D. Mo. Nov. 13, 2018) is unavailing because the complaint in *Sexton* relied entirely on the defendant's alleged fraud. *See Sexton*, No. 2:18-cv-04101, 2018 WL 5928060 (Doc. 4). The plaintiff made no allegations of negligence, let alone allegations of negligent hiring and training.

Here, Appellees assert much more than a claim for fraud against Appellants. Appellees assert claims of negligence both in the performance of the CEs and in the hiring and training of the physicians performing the CEs. Determining Appellants' negligence necessarily turns on a construction of federal law, i.e., the numerous rules and regulations issued by SSA that are required to be made applicable to DDS and ultimately Appellants. POMS DI 22510.000-22510.114 (detailing what must occur during a consultative examination).

Similarly, reliance on *Thomas v. VOA of North LA.*, No. 17-cv-1196, 2017 WL 5762453 (W.D. La. Oct. 3, 2017) is unpersuasive. In *Thomas*, the plaintiff sued the VOA claiming that "[t]here's a direct show of misrepresentation in my disability case." *Id.* at *1. Based on the court's analysis it seems the plaintiff was attempting to sue for legal

47

malpractice, not negligence. *Id.* ("It appears that [plaintiff] is unhappy with representation provided by the VOA or Ms. Enright in connection with a claim for social security benefits. Any such claim would arise under state law for legal malpractice or some other form of malpractice-type tort."). *Thomas* is inapposite to the current cases because the current cases involve allegations of negligence in the performance of the Appellees' CEs and allegations of negligent hiring and training—Appellees allegations have nothing to do with legal malpractice.

Appellees' Petitions raise questions that fundamentally turn on the construction of federal law. While it is true that fraud is a state law claim that could be determined in state court, Appellees' Petitions assert allegations of negligence in the performance of CEs and the hiring and training of the physicians performing the CEs. To determine whether Appellants were negligent necessarily requires interpreting the countless rules and regulations Appellants are obligated to follow in the CE process. Thus, Appellees' Petitions raise a federal question and removal based on that question is proper.

Appellate Case: 23-2443     Page: 58     Date Filed: 07/27/2023 Entry ID: 5300239

## CONCLUSION

For the reasons above, the Court should reverse the district courts' judgments.

ARMSTRONG TEASDALE LLP

*/s/ David A. Jermann*
David A. Jermann
Zachary S. Beach
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3420 (phone)
djermann@atllp.com
zbeach@atllp.com

49

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,767 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

The electronic version of this brief has been scanned for viruses and the brief is virus-free.

*/s/David A. Jermann*

Appellate Case: 23-2443    Page: 60    Date Filed: 07/27/2023 Entry ID: 5300239

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/David A. Jermann*